# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Glen J. Lerner,<br><br>    Plaintiff<br><br>v.<br><br>Executive Marketing Consultants, Inc., et al,<br><br>    Defendants | Case No.: 2:18-cv-01481-JAD-DJA<br><br>**Order Granting in Part Defendants'<br>Motion to Dismiss or Transfer**<br><br>[ECF No. 6] |

    Plaintiff Glen J. Lerner owns the federally registered trademark "ONE CALL, THAT'S ALL" and uses it to market his personal-injury law firms. Defendant Executive Marketing Consultants, Inc. (EMC) owns the federally registered trademark "ONE CALL . . . DOES IT ALL" and licenses it to EMC's customers, including defendant Ellis Law Corporation. Lerner sues the defendants for infringing his trademark in their advertising. EMC and Ellis move to dismiss the complaint for lack of personal jurisdiction, arguing that they have not purposefully directed their activities to Nevada, or, in the alternative, to transfer this case to the United States Court for the Central District of California. Because Lerner does not allege that Ellis and EMC expressly aimed their conduct towards Nevada and caused foreseeable harm in Nevada, I cannot conclude that Ellis and EMC have sufficient minimum contacts with Nevada to justify exercising long-arm jurisdiction over it. So I dismiss Lerner's complaint for lack of personal jurisdiction, and I do not reach the motion for transfer.

## Background

    Lerner contends that he is a "a highly successful and respected attorney with a national reputation in the practice of litigation, including but not limited to personal injury, wrongful

death, product liability, professional malpractice and many related legal services."[1] He is "also one of the largest advertisers of legal services in the United States."[2] Lerner began using "ONE CALL, THAT'S ALL" in his advertising as early as 1998, and the trademark now features prominently on his website and advertising "throughout the United States."[3] Lerner has spent forty to fifty million dollars advertising "ONE CALL, THAT'S ALL" in the Las Vegas area and more than fifty million dollars to advertise it in Arizona and Chicago.[4]

EMC is "an advertising agency that creates advertisements and marketing plans for law firm clients."[5] EMC is incorporated and has its principal place of business in California.[6] EMC has one client in Nevada, representing less than 1% of its total revenue.[7] In his declaration, EMC President Scott Jensen states that "EMC has never advertised, offered and/or promoted in the state of Nevada 'ONE CALL . . . DOES IT ALL' in connection with legal services," nor has it "ever used or authorized a licensee to use its registered mark 'ONE CALL . . . DOES IT ALL' on any advertisements or other material physically located in the State of Nevada, sent any advertisements using 'ONE CALL . . . DOES IT ALL' to Nevada, or used any advertisements specifically targeting clients or anybody else located in the State of Nevada."[8]

---

[1] ECF No. 1 at ¶ 11.
[2] *Id.*
[3] *Id.* at ¶¶ 18, 20.
[4] ECF No. 17-1 at ¶ 7.
[5] ECF No. 6-1 at ¶ 3.
[6] ECF No. 1 at ¶ 5.
[7] ECF No. 6-1 at ¶ 3.
[8] *Id.* at ¶ 8.

Ellis is a "is a law firm that primarily provides personal injury legal services to clients."[9] Ellis is incorporated and has its principal place of business in California.[10] The "majority" of Ellis's clients reside in California, and it has not represented a "Nevada-based" client for at least seven years.[11] Ellis does not employ any attorneys licensed to practice law in Nevada.[12] In his declaration, Ellis's Senior Partner Andrew Ellis denies that Ellis has "ever advertised in any location or on any materials physically located in the State of Nevada, sent any advertisements to Nevada, or used any advertisements specifically targeting clients located in the State of Nevada."[13]

Ellis licenses "ONE CALL . . . DOES IT ALL" from EMC,[14] and the trademark features prominently in Ellis's advertising and website.[15] Ellis's website states that the firm "provides nationwide representation" and "represent[s] clients throughout the nation."[16] The website includes a "Live Chat" feature that allows users to discuss their cases with a third-party,[17] as well as another feature "that allows users to submit inquiries about their cases."[18]

On December 23, 2016, Lerner's firm sent Ellis a cease-and-desist letter on its Nevada letterhead, alleging that Ellis's use of "ONE CALL . . . DOES IT ALL" infringed Lerner's

---

[9] ECF No. 6-3 at ¶ 3.
[10] ECF No. 1 at ¶ 6.
[11] ECF No. 6-3 at ¶ 3.
[12] *Id.*
[13] *Id.* at ¶ 6.
[14] *Id.* at ¶ 7.
[15] ECF No. 1 at ¶ 27.
[16] ECF No. 14-1 at ¶ 6.
[17] *Id.* at ¶ 7; ECF No. 19-1 at ¶ 3 ("The chat feature is managed by a third party; and does not allow persons to communicate directly with an [Ellis] attorney.").
[18] ECF No. 14-1 at ¶ 8.

3

trademark.[19] Lerner filed this suit on August 9, 2018, and EMC and Ellis now move to dismiss for lack of personal jurisdiction.[20]

## Discussion

The Fourteenth Amendment's Due Process Clause limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[21] "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required," for a court to exercise personal jurisdiction, "the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[22] "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."[23] Because Lerner concedes that Ellis and EMC are not subject to general jurisdiction in Nevada,[24] I apply only a specific-jurisdiction analysis.

Specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[25] "In contrast to general, all-

---

[19] ECF No. 6-3 at ¶ 8; ECF No. 6-4 (indicating Las Vegas, Nevada address).

[20] Lerner requests jurisdictional discovery in his opposition to the motion. ECF No. 14 at 15–16. Because Magistrate Judge Hoffman has already denied Lerner's request, ECF No. 28, and the parties have not objected, I do not address the request.

[21] *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Nevada's long-arm statute grants courts jurisdiction over persons "on any basis not inconsistent with" the U.S. Constitution, Nev. Rev. Stat. § 14.065, the jurisdictional analyses under state law and federal due process are identical. *Walden*, 571 U.S. at 283.

[22] *Walden*, 571 U.S. at 283 (ellipses omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[23] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[24] ECF No. 14 at 6.

[25] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

4

purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"[26] Courts in the Ninth Circuit apply a three-prong test to determine whether specific jurisdiction over a defendant exists: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable."[27] The plaintiff bears the burden of satisfying the first two prongs.[28] In deciding whether a plaintiff has met his burden, I must accept as true the uncontroverted allegations in his complaint, but a plaintiff cannot rely on "bare allegations" alone.[29] I also may review affidavits or declarations submitted by either side.[30]

Turning to the first prong, the term "purposeful availment" describes two distinct analyses: purposeful availment and purposeful direction.[31] Both parties apply a purposeful-direction analysis,[32] which is the "proper analytical framework" for intentional torts, including infringement of intellectual property rights.[33] To purposefully direct conduct towards Nevada, a defendant must (1) commit an intentional act, (2) expressly aimed here, (3) that causes foreseeable harm here.[34] It is not enough that the defendant's acts might create "foreseeable

---

[26] *Id*. (internal citations and quotations omitted).

[27] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

[28] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

[29] *Id*. (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[30] *Id*.

[31] *Id*. at 802.

[32] ECF No. 6 at 13; ECF No. 14 at 7–8.

[33] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

[34] *Id.* at 1227–28.

effects in the forum state."[35]  And it is not enough that a defendant knew that the victim of his tortious activity resides in the forum state.[36]  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[37]

### A. Intentional act

For purposes of personal jurisdiction, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results."[38]  Other decisions recognize that trademark infringement is an intentional act,[39] and defendants do not contest that the conduct alleged here constitutes an intentional act.[40]  Accordingly, Lerner has satisfied the first prong of the purposeful-direction test.

### B. Expressly aimed at Nevada

It is the second prong of that test where Lerner fails.  Courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."[41]  "[M]aintenance of a passive website

---

[35] *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation and quotation marks omitted).

[36] *Walden*, 571 U.S. at 283–290.

[37] *Id.* at 290.

[38] *Wash. Shoe*, 704 F.3d at 674.

[39] *See, e.g.*, *Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*, 116 F. Supp. 3d 1166, 1170–71 (D. Nev. 2015).

[40] ECF No. 19 at 2 ("As demonstrated below, Defendants' actions do not satisfy the second and third prongs of the effects test.").

[41] *Mavrix*, 647 F.3d at 1229.

6

alone cannot satisfy the express aiming prong."[42] Instead, the defendant must do "something more" that "directly target[s] the forum."[43]

Lerner argues that Ellis's "highly interactive" website is "something more" because defendants can transact business with clients in Nevada through the "Live Chat" and inquiry features of the website.[44] Ellis responds that it does not transact business on its website because it neither provides legal advice nor enters into attorney-client relationships through the website.[45] The cases cited by Lerner are distinguishable because they involve websites through which commercial transactions with the forum state could be conducted.[46] For example, the website at issue in *MGM Resorts Intern. v. Unknown Registrar of WWW.IMGMCASINO.COM* allowed "visitors to play casino games, including baccarat, roulette, and various dice and card games."[47] But Ellis's website is more like those at issue in *Cybersell, Inc. v. Cybersell, Inc.* and *Pebble Beach Co. v. Caddy*, which allowed visitors to submit inquiries but not conduct transactions.[48] Ellis's "Live Chat" feature is also operated by a third-party, and third-party contacts with a forum are insufficient on their own to confer personal jurisdiction on a defendant in that forum.[49]

---

[42] *Id*.

[43] *Id.*

[44] ECF No. 14 at 9–10.

[45] ECF No. 19 at 10; ECF No. 19-1 at ¶¶ 2–3.

[46] *See CE Resource, Inc. v. Magellan Group, LLC*, No. 2:08–CV–02999–MCE–KJM, 2009 WL 2031721, at *5 (E.D. Cal. Jul. 8, 2009) (website acted as "even more than a virtual store"); *North Sister Publishing, Inc. v. Schefren*, No. 6:14–CV–1395–TC, 2015 WL 2356889, at *5 (D. Or. May 14, 2015) ("defendants have sold products through their website").

[47] *MGM Resorts Intern. v. Unknown Registrar of WWW.IMGMCASINO.COM*, No. 2:14–CV–1613–GMN–VCF, 2015 WL 5674374, at *8 (D. Nev. Jul. 8, 2015).

[48] *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

[49] *See Reflex Media, Inc. v. SuccessfulMatch.com*, No. 2:18-CV-00259-GMN-GWF, 2019 WL 1177962, at *4 (D. Nev. Mar. 11, 2019) ("Plaintiffs have not demonstrated that Defendants

Lerner also points to statements on Ellis's website that Ellis serves clients nationwide as "something more" under the Ninth Circuit's holding in *Mavrix Photo, Inc. v. Brand Techs., Inc.*[50] *Mavrix* requires additional conduct that "directly target[s] the forum,"[51] however, and statements that Ellis serves clients nationwide do not directly target Nevada. Ellis's website thus does not connect it "to the forum in a meaningful way."[52]

Nor is this prong satisfied because Ellis and EMC targeted their tortious conduct at Lerner, whom Ellis and EMC allegedly knew to be a resident of Nevada.[53] The Ninth Circuit had long held that "express aiming" is satisfied if the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."[54] But since the Supreme Court's decision in *Walden v. Fiore*, such a theory will not satisfy the "express aiming" requirement on its own, "absent compliance with what *Walden* requires."[55] So I "must look to the defendant[s'] 'own contacts' with the forum, not to the defendant[s'] knowledge of [] plaintiff's connections to a forum."[56]

EMC denies that it has ever used or licensed "ONE CALL . . . DOES IT ALL" in Nevada, and Ellis refutes that it has ever advertised in Nevada or targeted Nevada with its advertisements.[57] Lerner argues that the defendants expressly aimed their conduct at Nevada

---

directed the affiliates on where and how to solicit business, and the facts in this case show otherwise.") (citing *Walden,* 571 U.S. at 286).

[50] ECF No. 14 at 10.

[51] *Mavrix*, 647 F.3d at 1229.

[52] *Walden*, 571 U.S. at 290.

[53] ECF No. 14 at 10–11.

[54] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

[55] *Id.* at 1070.

[56] *Id.* (quoting *Walden*, 571 U.S. at 289).

[57] ECF No. 6-1 at ¶ 8; ECF No. 6-3 at ¶ 6.

8

after receipt of his 2016 cease-and-desist letter,[58] but *Walden* and the Ninth Circuit's 2017 opinion in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.* instruct that a defendant's knowledge that plaintiff resides in the forum state is not enough.[59] And to find personal jurisdiction based on receipt of a letter from Nevada "would essentially be to hold that a [trademark] holder can always sue wherever it happens to be located."[60] Lerner also states in his declaration that there "is a significant cross-over in the Las Vegas and Los Angeles marketplace" and recounts that he has received calls from California residents who had previously visited Las Vegas.[61] Even if Ellis had received business from Nevada residents who had previously seen Ellis advertising in Los Angeles, however, such "fortuitous" contacts are "not appropriate for establishing minimum contacts."[62] Similarly, Ellis's former Nevada-based client and EMC's single Nevada-based client—representing less than 1% of EMC's revenue—are insufficient to establish minimum contacts unless they show purposeful direction.[63] Lerner thus does not allege facts showing that Ellis and EMC have "expressly aimed" their tortious conduct towards Nevada because neither the website nor the additional conduct suggests that either defendant targeted the Nevada market.

---

[58] ECF No. 14 at 12.

[59] *Walden*, 571 U.S. at 283–290; *Axiom Foods,* 874 F.3d at 1069–70.

[60] *Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-CV-02991-JST, 2015 WL 5834135, at *4 (N.D. Cal. Oct. 7, 2015).

[61] ECF No. 17-1 ¶ 19.

[62] *Bellagio Car Wash,* 116 F. Supp. at 1172 (visits to Los Angeles car wash by Las Vegas residents would not affect jurisdictional analysis) (citing *World–Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 295 (1980)).

[63] *Adobe*, 2015 WL 5834135, at *5 ("The 1.2% of [defendant's] sales shipped to California are likewise unhelpful to Adobe because they too show no purposeful direction.").

**C. Foreseeable harm in Nevada**

The third prong of the purposeful direction analysis requires me to find that defendants' tortious conduct "caused harm that [they] knew was likely to be suffered in the forum."[64] Lerner argues that "after receipt of the cease and desist letter, if not beforehand," Ellis and EMC "knew that continued infringement of ONE CALL, THAT'S ALL! likely would cause harm to Plaintiff in Nevada."[65] Personal jurisdiction cannot be exercised based on the letterhead of a cease-and-desist letter; as *Walden* instructs, a defendant's knowledge that a plaintiff resides in the forum state is not enough to support personal jurisdiction.[66] To the extent Lerner alleges that harm was foreseeable before the December 23, 2016, letter, that bare allegation alone is not sufficient to establish personal jurisdiction.

Because Lerner does not allege facts showing that Ellis and EMC expressly aimed their tortious conduct towards Nevada and caused foreseeable harm there, he has not carried his burden to show that Ellis and EMC have purposefully directed their activities at the forum state. I do not consider whether Lerner's claims arise out of his contacts with Nevada and whether the exercise of personal jurisdiction is reasonable because Lerner has not established that Ellis and EMC purposefully availed themselves of the forum state. So I dismiss Lerner's claims against Ellis and EMC.

---

[64] *Brayton Purcell LLP*, 606 F.3d at 1131.
[65] ECF No. 14 at 12.
[66] *Walden*, 571 U.S. at 283–290.

### D. Motion to Transfer

Ellis and EMC move in the alternative to transfer this case to the Central District of California under 28 U.S.C. §§ 1404(a) and 1406(a).[67]  Because I dismiss this case for lack of personal jurisdiction, I do not reach the motion for transfer.

### Conclusion

IT IS THEREFORE ORDERED that Ellis and EMC's motion to dismiss or transfer **[ECF No. 6] is GRANTED in part**.  Lerner's **claims against Ellis Law Corporation and Executive Marketing Consultants, Inc.** are **DISMISSED** for want of personal jurisdiction. The Clerk of Court is directed to **CLOSE THIS CASE**.

Dated: August 20, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[67] ECF No. 6 at 1.